## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

MARIE PUPKE, MARK PUPKE and ) CASE NO. 9:13-CV-80860-KLR
EURO INTERNATIONAL MORTGAGE INC. )
           Plaintiffs, )
        vs. )
TIMOTHY P. MCCABE, MCCABE & )
SAMILJAN, LLC, CITY TITLE, INC., )
OLD REPUBLIC NATIONAL TITLE )
INSURANCE CO., TIMOTHY MCCABE, PA, )
CITY TITLE, LLC, PHIL RUFFOLO, )
JO NAGORKA, ELIZABETH BELTRAN, )
STEVE T. SAMILJAN, CHERYL BERRY and )
TD BANK, N.A. ("TD Bank") )
          Defendants. )
_____)

## PLAINTIFFS' RESPONSE TO DEFENDANT OLD REPUBLIC NATIONAL
## TITLE INSURANCE COMPANY'S MOTION TO DISMISS

Plaintiffs MARIE PUPKE, MARK PUPKE and EURO INTERNATIONAL

MORTGAGE INC., hereby files the within Response to Defendant OLD REPUBLIC

NATIONAL TITLE INSURANCE COMPANY'S ("OLD REPUBLIC") Motion to Dismiss

Complaint [D.E. 18] filed on October 16, 2013, with incorporated memorandum of law, and in

support of this Response. Defendant, Old Republic seeks to dismiss Plaintiffs' Complaint [D.E. 1]

by motion filed on October 28, 2013 ("Motion"). Because Plaintiffs have has properly stated

claims for violation of the RICO Act, 18 U.S.C. § 1962(c) and (d), and also a claim for civil

conspiracy under state law, Old Republic's motion should be denied.

### I.      Introduction

The fraudulent conduct that the Defendant Timothy McCabe has, as a practical matter,

CASE NO. 9:13-CV-80860-KLR

already been conclusively established as Mr. McCabe has pled guilty and is awaiting sentencing for his role in the Ponzi scheme. [CASE NO.: 13-80153-CR-RYSKAMP] The argument being interposed by defendant OLD REPUBLIC is that that that theft is all the work of a single individual without the aid and conduct of anyone else. That claim is simply that, a claim. It is submitted that the Complaint sets forth claims involving the receipt and movement of money that could not be accomplished without the knowing aid and assistance of the other named defendants. It is the movement of money that is the life blood of economic crime. The Complaint demonstrates the hand of OLD REPUBLIC in enabling the fraudulent enterprise. The criminal enterprise involved the movement of funds from several business enterprises, including but not limited to McCabe & Samiljan, P.A., City Title, LLC, and several non-party corporations controlled by Timothy McCabe and several of the named defendants. Judicial notice should be taken of the fact that there are currently pending in the Circuit Court of Palm Beach County two lawsuits against Mr. McCabe and his law firm and one in the USDC for Southern District of Florida that was concluded by a default. (Case No. 12-61872-CIV-SCOLA)

1. **Adam Stephens And Full Circle Marketing & Sales, Inc. D/B/A Full Circle Financial Solutions, Inc. Timothy McCabe, Steven T. Samiljan and McCabe & Samiljan, LLC,** Case No. 2013CAOl3393 involving an Escrow Agreement wherein the Plaintiffs placed $150,000 in escrow in the trust account of Defendant McCabe & Samiljan and Plaintiffs advanced $26,150.00 to Titan List and Mailing to pay for marketing expenses for Defendants. The Plaintiff's in that matter allege that McCabe and Samiljan, in their individual and corporate capacities employed McCabe & Samiljan with the intent of perpetrating a fraud upon Plaintiff, including obtaining monies from Plaintiffs which Defendants intended to use, and did convert

CASE NO. 9:13-CV-80860-KLR

and steal, for their own personal purposes. A true and correct copy of the Complaint is attached hereto and marked Exhibit "1."

2. **Timothy Sweetman v. Timothy P. McCabe, Steven T. Samiljan, McCabe & Samiljan, L.L.C., And Timothy McCabe, PA Case No: 2013 CA 008250.** It is by Mr. Sweetman that the *Criminal Enterprise* involved athletic shoes, *Short Sales, and Investment Scams.*

    a. Ringstar, Inc. was one "of McCabe's first criminal forays was his purchase of Ringstar, Inc., a Boynton Beach company selling patented shoes for karate and kickboxing competitions. The Florida Division of Corporation records reveal that Samiljan was also involved with Ringstar, listed as both an officer (secretary) and director for the company. Inquiry into the available court records reveals apparent financial trouble at Ringstar. In December 2012, Ringstar settled a lawsuit filed by CMS Sports alleging that McCabe failed to pay for nearly 6,400 pairs of shoes manufactured specifically for Ringstar. Upon information and belief, Ringstar was purchased and financed by McCabe with unwitting investor monies, according to Mr. Sweetman's complaint.

    b. Loan Modifications Scheme. According to Sweetman's complaint McCabe also utilized his professional network and his Law Firms to target distressed homeowners struggling to maintain onerous mortgages. Under the guise of the federal homeowner assistance and loan modification program ("HAM"), McCabe promised clients help in modifying and/or refinancing their current mortgages at lower rates through established financial institutions. It is believed that clients to send monthly loan modification payments directly to the Law

Firm's escrow accounts. There the money was comingled with Pupke's funds held by McCabe and Samiljan and City Title, LLC. McCabe and Samiljan then used the funds to further the Ponzi scheme.

c. **Short Sales:** McCabe and his co-conspirators also solicited investment in short sale and foreclosure real estate properties identified as "sure-fire" money making opportunities. More often than not, McCabe and his cohorts accepted escrow deposits, but rarely was the property ever actually purchased. As detailed further below, and upon information and belief, the deposit secured from innocent investors was used to fuel the criminal enterprise.

d. **Cruise Superstore.** McCabe devised another scheme to increase cash deposits, launching the Cruise Superstore which promised participants' access to online discounted cruise vacation offers. McCabe and his employees he collected client money but failed to deliver any products or services. In mid-March 2013, less than two months after opening operations, the Florida Attorney General received a complaint from a Florida resident claiming she booked and paid online $3,045 for a seven-night trip through the Cruise Superstore (http://www.fantasyvacationdeals.com), but received no tickets and no refund despite "several hundred calls." This is one of several complaints filed in the company's brief months of operation and further indicia of McCabe's fraudulent predilections.

e. Mr. Sweetman a licensed Florida real estate broker and investor Plaintiff was introduced to McCabe through a mutual friend, Shane Santacroce "Santacroce"), who was a business associate of McCabe's and the McCabe PA

office manager. Sweetman claims that he learned from Santacroce that McCabe worked primarily as foreclosure defense attorney, as an operator running his own title company and was an agent for associated with Old Republic Title Insurance. Sweetman invested $50,000.00 and demanded that McCabe return his $50,000.00 deposit. On March 28, 2013, McCabe issued a check from the M&S Law Firm Trust Account in the amount of $50,000.00. On or about April 5, 2013, Plaintiff was informed by his bank that the check had bounced.

f. *Bogus PayPal Accounts*- Sweetman also alleged in his complaint that prior to demanding repayment of the $50,000.00 escrowed deposit described *supra,* McCabe approached Plaintiff about a second unique, time-sensitive investment opportunity. According to McCabe, one of his business partners from Ringstar, Timothy Henry ("Henry"), had recently started a discounted cruise line booking service. McCabe represented that Henry used PayPal as his credit card merchant services provider and, consistent with PayPal's policies, they were holding merchant funds received for a period ranging between 90 and 180-days. McCabe stated that the new venture needed access to capital now in order to grow and offered Plaintiff the opportunity to provide a $30,000.00 bridge loan in exchange for the guaranteed right to receive the $40,000.00 currently in the merchant account. McCabe represented that in 60-days, Sweetman would receive the first of four (4) installment of $10,000. Thereafter, in each of the following three weeks, another $10,000.00 would be disbursed until Plaintiff received the $40,000.00 promised. In support, McCabe produced a PayPal account statement in Henry's name showing a balance in excess of $40,000.00.

CASE NO. 9:13-CV-80860-KLR

Additionally, McCabe produced a February 14, 2013, Promissory Note executed by Henry, promising to pay the sum of $40,000.00. As a further inducement, McCabe informed Plaintiff that he maintained an irrevocable power of attorney over the subject funds which meant the money could not be moved without McCabe's consent.

On or about February 20, 2013, Henry executed a Security Agreement assigning Plaintiff an unconditional priority interest in the PayPal account and secured by the above referenced Promissory Note in the original principal sum of $40,000.00.In reliance thereof, on or about February 20, 2013, Sweetman delivered to McCabe a $30,000.00 check made payable to the M&S Law Firm Trust Account for the "Timothy Henry Promissory Note." Sweetman searched for and found Henry's home number. Upon calling, learned that Henry knew nothing about the Security Agreement, the Promissory Note and/or any assignment of the PayPal proceeds. Moreover, Henry acknowledged that he never signed any such Security Agreement and called the signature affixed thereto and notarized by Veronica Ziff a forgery. Sweetman alleges in his complaint that Samiljan was as a partner in the Law Firms, a board member and company officer at Ringstar, the registered agent for the Cruise Superstore, and a co-investor with McCabe in multiple short sale investment properties and that as a result of McCabe and Sanmiljan negligent performance of their professional obligations, Plaintiff suffered losses in excess of $67,000.00.

3.    CHARLES H. LICHTMAN, as Receiver for FREEDOM LEGAL PLANS, LLC, et al., vs. MCCABE & SAMILJAN, L.L.C., a Florida limited liability company,

and TIMOTHY P. MCCABE, individually, Defendants (Ancillary Proceeding to Case No. 12-61872-CIV-SCOLA) is another action filed against McCabe and Samiljan. A default was entered in this matter where it was alleged that from at "least mid-2010 to approximately October 2012 the McCabe and Samiljan engaged in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide mortgage loan modification services and foreclosure defense services to consumers. From August 2010 through September 2012, Defendant McCabe and Samiljan received to $314,425.00. It was further alleged that payments to McCabe were made with the actual intent to hinder, delay or defraud a creditor inasmuch as the Four Year Transfers to McCabe did not benefit the Receivership Defendants. Defendant McCabe benefitted from them to the detriment of the consumer victims and the Receivership Defendants which could not or cannot repay or refund consumer victims of the Legal Plans scheme. A true and correct copy of the complaint is attached hereto and marked Exhibit "3."

The Receivership Defendants marketed these services in a variety of ways, including through websites, and by their agents and telemarketers who contacted consumers nationwide through unsolicited telemarketing calls. Through this marketing, the Receivership Defendants specifically sought out and preyed upon financially distressed homeowners to lure them into expensive membership programs predicated on assurances that the consumers would receive full-service legal representation from expert mortgage foreclosure defense attorneys who would fight their lenders to save their homes from foreclosure, or make their mortgage payments more affordable. In addition, the Receivership Defendants represented to

CASE NO. 9:13-CV-80860-KLR

consumers that they would provide them (at a cost) with alleged forensic loan audits and other purportedly beneficial reports that would identify errors in their mortgage loan documents and predatory lending practices, that would assist the attorneys in defending against foreclosure cases, and/or win loan related concessions from lenders. The name of the membership program advertised and marketed to consumers changed numerous times, but included: Freedom Legal Plans, American Legal Plans, Consumer Legal Plans, Frontier Legal Plans, Prime Legal Plans, and lastly, Prime Access Management [collectively, "Legal Plans"].

The Defendants provided consumers with additional materials and statements, via e-mail to bolster their claims about the outcomes that consumers who enrolled in Legal Plans could expect to achieve.

It is submitted that there is not enough time in the day for one person to conduct all of the transactions to essential to the operation of all of the business enterprises. We respectfully submit, therefore, that the *existence* of the racketeering conspiracy in this case is not open to reasonable debate. The actions enabled all of the named defendants including OLD REPUBLIC NATIONAL TITLE INSURANCE and together they all profited from the scheme. The question raised in the Motion to Dismiss is whether Defendant OLD REPUBLIC became a member of the RICO conspiracy during its existence and, specifically with respect to the instant motion, whether Plaintiff has met the minimum threshold pleading requirements of its civil RICO and fraud claims. The answer to both of these questions is, "yes." Defendant's argument fails to appreciate that they have been accused of participating in a conspiracy to defraud.   Plaintiffs have alleged that all the co-defendants engaged in a conspiracy to and misappropriate funds that they had placed in escrow at the direction of defendant Timothy McCabe and Law Offices of McCabe & Samiljan, P.A. To

CASE NO. 9:13-CV-80860-KLR

that end, an extensive description of the relationships between and among the co-conspirator/co-defendants was outlined and a description of the factual and legal theories that made them liable to Plaintiffs. Liable for the underlying torts of fraud, breach of fiduciary duty, conversion, and a bad faith based breach of contract have been adequately set forth in the Complaint.

OLD REPUBLIC was directly involved in the scheme, not only as the holder and conduit of the defrauded funds and the recipient of fees for title insurance, but also as an active participant in the Enterprise. OLD REPUBLIC through its employees approved McCabe & Samiljan, PA to be its authorized agent. The authorization was then rescinded in October 7, 2012 (paragraph 37 of Complaint.) However, OLD REPUBLIC then enable McCabe and his co-defendants to funnel the title work through Defendant CITY TITLE. The documentation and regarding the revocation of authority of the Defendant Law Firm is in the exclusive possession of OLD REPUBLIC and will be subject to production in this lawsuit. OLD REPUBLIC took overt crucial steps and it conduction an investigation into McCabe and revoked his authority. OLD REPUBLIC conduct as alleged in the facts in the Complaint exceed what is necessary to properly allege a claim. The motion is meritless and should be denied.

## II.    Summary of Factual Allegations

In the Complaint and the Civil RICO Case Statement (hereinafter "CRCS"), the Plaintiff has set forth in detail the RICO Enterprise in which Timothy McCabe and others collaborated to orchestrate a plan to cycle through millions of dollars from multiple and intertwined business enterprises including a law firm, resulting in the defrauding of Plaintiff and others of several millions of dollars.

The scheme began as early as 2010 and ended on April 2013 when McCabe absconded. McCabe plead guilty and is currently awaiting sentencing. It is alleged in the complaint that OLD

CASE NO. 9:13-CV-80860-KLR

REPUBLIC participated in the RICO Enterprise through its various employees, including senior officers, and others known and to be revealed in discovery, when they:

1. Enabled

2. Actively concealed the RICO Enterprise's fraudulent activity;

3. created and enhanced a false appearance of a legitimate enterprise;

4. vouched for the legitimacy of the McCabe by enabling him to continue to sell title insurance though City Title;

5. benefitted by profiting from the sale of title insurance policies;

6. transactions necessary to execute and conceal the scheme, including receiving fees; and

7. Engaged in other activities on behalf of the Enterprise to be revealed in discovery.

## III.    Pleading Standard

### A. General Standard Applicable to Motion to Dismiss

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Recent opinions by the U.S. Supreme Court, including decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), revised the applicable standard, which Court summarized by this court in *Jones v. Fla. Power & Light Co. No. 09-22683 April 29, 2010. 2010 WL 1740713 United States District Court, S.D. Florida.* In a Rule 12(b)(6) motion to dismiss, "the pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank,* 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the Plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Nonetheless, "a formulaic recitation

CASE NO. 9:13-CV-80860-KLR

of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* To survive a motion to dismiss, a complaint must plead enough factual matter that, if taken as true, suggests that the elements of the cause of action will be met. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007). Thus, the well-pleaded factual allegations must be taken as true, and the alleged facts must suggest the required elements of the causes of action on which Plaintiff can recover. In particular, a plaintiff asserting fraud claims "must state with particularity the circumstances constituting fraud." *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993); Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b)'s particularity requirement by stating: (1) precisely what statements or omissions were made, (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making certain statements); (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). *Grovenor House, Inc. v. E.I. du Pont de Nemours & Co.*, No. 09-21698 CIV, 2010 U.S. Dist. LEXIS 20378, at *6 (S.D. Fla. Mar. 8, 2010) (footnote omitted). "The purpose of Rule 9(b) is to alert defendants to the precise misconduct with which they are accused and to protect defendants from contrived charges of fraudulent behavior." *Id* at *6 n.2 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997)). "Rule 9(b) does not, however, abrogate the concept of notice pleading." *Id.* at *7 n.2 (quoting *Brooks*, 116 F.3d at 1371).

As detailed above in the factual summary and further explained below, Plaintiff has taken

CASE NO. 9:13-CV-80860-KLR

painstaking efforts to set forth the facts *available to it* at this stage of the litigation in both the Complaint and the Civil RICO Case Statement. The Plaintiff expects to uncover more facts during the discovery phase of the litigation, to the extent that its journey is not road-blocked by the primary players' invocation of the Fifth Amendment privilege against self-incrimination.

**B. Defendant OLD REPUBLIC Has Set a Bar Higher Than Rule 9(b) Demands - Plaintiff is Neither Required to Already Possess Facts That Will Be Revealed in Discovery Nor to Allege Evidence in the Pleadings**

As stated in *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001), Rule 9(b) "must not abrogate the concept of notice pleading." "[I]n some circumstances, [] 'to pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation.' " *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1290 (S.D.N.Y. 1996) (citations omitted). "However, it is equally true that 'a complainant is not required to plead evidence.' " *Id.* (citation omitted). "Nor need a plaintiff plead facts that are within the exclusive provenance of the defendants." *Id.* (citations omitted).

Plaintiff has articulated extensive facts demonstrating that McCabe and Old Republic worked together to sell a significant volume of title insurance. Old Republic based upon past experience knew that McCabe & Samilijan, P.A. engaged in conduct and activities that were significant enough for it to revoke its authority to act and to notify customers of their decision in October of 2012. In sum, Old Republic played a critical role in the Enterprise, with the expectation and intent that Plaintiff would rely on them as assurances of the legitimacy of the transactions and as a basis to further conduct business with its agent McCabe and City Title.

CASE NO. 9:13-CV-80860-KLR

**C.   The Court Should Permit Discovery in this Case Before Requiring Plaintiff to Plead Extensive Facts Now in the Hands of Defendants**

As the court noted in *In re Managed Care Litigation, supra*: "While Defendants protest that the level of factual detail has not been reached, the pleadings are justifiably limited at this stage because [p]laintiffs have not had the aid of discovery. The Court finds that the preliminary sketch of a RICO enterprise provided by the [p]laintiffs adequately meets the Court's challenge." 298 F. Supp. 2d 1259, 1275 (S.D.Fla. 2003). Discovery is necessary in order to provide the very specific details now in the hands of the Defendants. *See, e.g., Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) (noting that when Rule 9(b) was drafted, RICO did not exist and allowing discovery before pleading of specific dates and times); *see also Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1036 (D. Iowa 2009) (finding RICO claims pled with sufficient particularity to allow a response by defendant but discovery was needed to determine which employees dealt with the internal systems at issue); *Comcast of So. Fla. II, Inc. v. Best Cable Supply, Inc.*, No. 07-22335-CIV, 2008 U.S. Dist. LEXIS 4258, at *16 (S.D. Fla. Jan. 22, 2008) (court took into consideration that discovery had not occurred in finding a reasonable inference of scienter in a RICO case).

Plaintiff asks the Court to also consider the silencing effect of the ongoing criminal investigation in this case in looking at the level of detail provided by the Plaintiff in the Complaint

**IV.   Plaintiff's Section 1962(c) RICO Claim Against OLD REPUBLIC Is Legally Sufficient**

Plaintiff has alleged facts supporting the elements necessary to establish a civil RICO claim under § 1962(c): (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006).

CASE NO. 9:13-CV-80860-KLR

**A. Enterprise**

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "A RICO enterprise exists 'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.' " *Jackson v. Bellsouth Telecommuns.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (citation omitted)). "The definitive factor is 'the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes.' " *In re Managed Care Litigation*, 298 F. Supp. 2d at 1274 (citation omitted). Taking the facts alleged in the Complaint as true for the purpose of considering Defendant's motion, Plaintiff has clearly alleged the association of two distinct entities, Rothstein and TD Bank,[8] for the purpose of engaging in a Ponzi scheme. As the Eleventh Circuit stated in *Williams*, "[t]his Court has never required anything other than a 'loose or informal' association of distinct entities." 465 F.3d at 1284.

Plaintiff has also properly alleged that the "enterprise had a common goal." *Id.* (citation omitted). In this case, the common purpose of the enterprise was to move money around and to make investors feel that their funds were secure to accomplish the Ponzi scheme described in the Complaint. The Bank clearly benefitted from this constant movement of huge sums of money, having tens of millions of dollars travel through its accounts on a daily basis; this movement is at the very essence of the Ponzi scheme. *See United States v. Silvestri*, 409 F.3d 1311, 1317 (11th Cir. 2005). The allegations of the Complaint make clear that both Old Republic and McCabe were focused on the goal of ensuring that client and investors were comfortable with the propriety of the real estate

14

transactions security of their escrowed funds.

It is submitted that the making money is a common purpose. *See United States v. Church*, 955 F.2d 688, 698 (11th Cir. 1992) (concluding the common purpose of making money was sufficient under RICO); *see also Williams*, 465 F.3d at 1284-85 ("Because the complaint clearly alleges that the members of the enterprise stand to gain sufficient financial benefits ... the plaintiffs have properly alleged a 'common purpose' for the purposes of RICO"). In sum, Defendants McCabe, Samiljan and their employees and related business CITY TITLE, LLC along with OLD REPUBLIC and its marketing and supervisory personnel, worked seamlessly together to extract money from real-estate investors, pretended to secure the money in trust accounts, and not auditing the trust accounts and enabling the movement of trust funds for their own benefit. It is submitted that Plaintiff has properly pled facts supporting all aspects of the RICO enterprise which perpetuated the crimes in this case.

## B.  Conduct/Participation

OLD REPUBLIC contend that the Plaintiffs have failed to allege participation in the operation or management of the enterprise itself, or that it had some part in directing the affairs of the enterprise, citing *Super Vision, v. Mega International Commercial Bank Co., LTD., 534 F. Supp. 2d* 1326, *1338* (2008) and *In Re: Managed Care Litigation,* 298 F. Supp. 2d at It is submitted that the complaint does contain sufficient factual allegations. It is submitted that Super Vision dealt with banking activities where as we are dealing with the issuance of an agency license or authority to sell title insurance and to receive and retain escrowed funds. It is submitted that OLD REPUBLIC is well aware of the pitfalls of its business as evidenced by prior litigation including but not limited to: FDIC as receiver for

CASE NO. 9:13-CV-80860-KLR

Washington Mutual Bank v. Old Republic Nationals Title Insurance Co. U.S.D.C. Southern District of Florida -Case 9:12-cv-81172-WJZ 4 wherein it was alleged that Old Republic's Agents (attorney's) in fact fraudulently and dishonestly handled documents and stole and otherwise misappropriated WaMu's funds, disbursing those funds contrary to WaMu's instructions. The seminal nature of the defendant's business involves residential loan transactions are customarily consummated by a closing agent such as McCabe & Samiljan and City Title, LLC who are responsible for ensuring that the transactions are completed in accordance with the terms,  and in the manner, approved by the lender as a condition of providing the funds. The escrowed funds  are entrusted to the closing agent, along with the duty to execute and record essential documents  and instruments and to disburse funds necessary to complete the transaction as directed by the lender and the parties to the transaction. Beginning in 2006, attorney Joseph Miller, Peter Hartofilis and Jason Vitulano agents of Old Republic engaged with and others in a criminal conspiracy to defraud WaMu of loan funds. All of this activity took place in South Florida. Old Republic's approved attorney, Knaust & Associates, P.A. Knaust, issued Old Republic's title insurance and acted as closing agent. Clearly Old Republic during the period 2006 to April 2013 lack any operating procedures to supervise and properly vet its approved agents or as plead they revoked McCabe's agency and then permitted him to continue under the banner of City Title.

In *Sogecable, SA v. NDS Group PLC*, the Ninth Circuit explained:

> To invoke liability under § 1962(c), *"some* part in directing the enterprise's affairs is required," *Reves v. Ernst & Young*, 507 U.S. 170, 179, (1993), but significant control is not required, *id*. at 179n.4.

16

CASE NO. 9:13-CV-80860-KLR

Instead, "one must [only] participate in the operation or management of the enterprise itself." *Id.* at 185. No. 04-56990, 2006 U.S. App. LEXIS 30891, at *6 (9th Cir. Dec. 31, 2006).

The Ninth Circuit reversed the lower court's dismissal of the complaint in *Sogecable*, finding the conduct element had been properly alleged where the defendant "at least helped to operate" the enterprise alleged by the plaintiffs. *Id.* Similarly, in *Williams*, the Eleventh Circuit found the plaintiff's allegations that the defendant "participated in the operation and management of the affairs of the enterprise" were sufficient to defeat a Rule 12(b)(6) motion. 465 F.3d at 1285; (quoting *Reves*, 507 U.S. at 179, "RICO liability is not limited to those with primary responsibility for the enterprise's affairs . . .") "The [*Reves*] operation or management test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *First Capital Asset Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004).

Defendant OLD REPUBLIC'S relies upon *Super Vision*, for the notion that banking services provided in the ordinary course do not constitute the degree of participation necessary to allege the conduct element. The case cited is distinguishable in one extremely important regard. The actions at issue were undertaken in support of the bank's own affairs. In this case, however, Defendant OLD REPUBLIC employees acted with McCabe and CITY TITLE to sell insurance products and facilitate real estate transactions. When OLD REPUBLIC failed to supervise its agents, revoked authority and facilitated continued operations that it knew were being performed by McCabe, it no longer acted merely as a seller of insurance products. It is submitted that the allegations pled in the complaint were not routine. Contrary to Defendant TD Bank's assertions otherwise, banks can be liable

17

CASE NO. 9:13-CV-80860-KLR

under RICO with the right degree of participation and so can title insurance companies. In

*In re National Century Financial Enterprises*, 617 F. Supp. 2d 700 (S.D. Ohio 2009), for

example, the court found a RICO case properly pled against banks despite defendant's

argument that it was "absurd . . . that a couple of individuals could have managed to enlist

the help of three global financial institutions, while also involving two leading accounting

firms and two prominent rating agencies, in committing a nearly $3 billion fraud." 617 F.

Supp. 2d at 715. "Whether [the defendant] thinks the alleged enterprise is too great to be

believed is irrelevant because a massive fraud is exactly what the complaint alleges and

what the court must accept as true for purposes of the motion to dismiss." *Id*

**C.  Predicate Acts**

The predicate act requirement requires the Plaintiffs to allege two or more distinct

but related predicate acts. Plaintiff has more than adequately pled each element of its

predicate acts, including scienter, under the wire fraud, 18 U.S.C. § 1343 and 1344.

To be clear, Plaintiff is not required at this stage to prove that Defendants had the

requisite intent, but rather merely allege that they had such intent. Until the Plaintiff has an

opportunity to engage in discovery, for example, to use forensic accounting to trace the

funds at issue and take depositions, it cannot allege every last detail about the inner

workings of the Enterprise, nor is it required to. What is clear is that the money was moved

because the Trust Accounts are now empty. (Compl. ¶ 61.) The majority of the predicate

acts involved the characteristic movement of money in a Ponzi scheme, while the

conduct/participation element has been supported by the activities engaged in by OLD

REPUBLIC employees. The facts supporting the predicate acts are sufficiently distinct

from those supporting Defendant OLD REPUBLIC'S participation in the Enterprise.

CASE NO. 9:13-CV-80860-KLR

### D.  Pattern of Racketeering Activity

The Supreme Court has interpreted "a pattern of racketeering activity," 18 U.S.C. § 1962(c), to require a plaintiff to "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The Court explained that predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. In this case, Plaintiff has properly alleged the pattern of racketeering activity through related predicate acts and closed-ended continuity, due to the collapse of the Ponzi scheme and McCabe's arrest in June 2013. *See Hunt*, 1991 U.S. Dist. LEXIS 16749, at *15.

Closed-ended continuity is subject to length requirements, and most courts have found that the RICO enterprise must last for a "substantial period of time." This has been interpreted to require that the wrongdoing exceed one year in duration. *See, e.g.*, *Jackson*, 372 F.3d at 1266 (stating that in the Eleventh Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year"). The following factors are useful in considering closed-ended continuity: the number of victims; the number and variety of predicate acts; the presence of separate schemes; the complexity and size of those schemes; and the occurrence of distinct injuries. *See Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1319 n.8 (S.D. Fla. 2009).

In the case sub judice, the number and variety of predicate acts and separate

CASE NO. 9:13-CV-80860-KLR

schemes were significant. While Plaintiffs were victimized late in the overall scheme, the scheme must be considered in its entirety for continuity purposes, because often it is only the later clients and real estate investors who suffer most of the loss, as occurred here. *See National Century*, 617 F. Supp. 2d at 716 n.2. This case involved an extensive set of criminal acts over a multi-year period, running the gamut from theft of trust funds to forging the signatures on documents to fraudulent invest schemes. The scheme must be considered in its entirety included all of the component parts. In summary, Plaintiffs have alleged sufficient facts to support its Section 1962(c) claim.

**V.      Plaintiff Has Alleged Sufficient Facts to Establish a Claim For RICO Conspiracy**

In order to plead a RICO conspiracy, Plaintiff must show that the defendant agreed to the overall objective of the conspiracy or to commit at least two predicate acts. *See, e.g., American Dental Ass'n v. Cigna Corp.*, No. 09-12033, 2010 U.S. App. LEXIS 9928, at *25 (11th Cir. May 14, 2010). "Neither overt acts, *United States v. Torres Lopez*, 851 F.2d 520, 525 (1st Cir. 1988), nor specific predicate acts that the defendant agreed personally to commit, [*United States v. Neapolitan*, 791 F.2d 489, 495-98 (7th Cir.), *cert. denied*, 479 U.S. 939 (1986)], need be alleged or proved for a section 1962(d) offense." *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991). Plaintiff need only allege that "the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity." *Id.* "A plaintiff need not offer direct evidence of a RICO agreement, the existence of conspiracy 'may be inferred from the conduct of the participants.' " *American Dental*, 2010 U.S. App. LEXIS 9928, at *25 (quotation omitted); *see also Hunt*, 1991 U.S. Dist. LEXIS 16749, at *17-18 (implication of agreement was sufficient).

It is submitted that Paragraphs 105 to 113 of the Complaint state the requisite allegations.

CASE NO. 9:13-CV-80860-KLR

Whether a conspiracy existed is ultimately a factual determination. To accept Defendant's "obvious alternative explanation" argument, in light of the extent of the fraud and the tip of the iceberg "irregularities" already discovered by Plaintiff, would be to usurp the province of the fact finder.

### VI.   Plaintiff Has Stated a Valid Claim for Aiding and Abetting Fraud

Defendant OLD REPUBLIC suggests that, despite the extensive allegations of its participation in the scheme to defraud investors contained in the Complaint, Plaintiffs' claim for aiding and abetting fraud is insufficient. To the contrary, Plaintiff has more than adequately pled Defendant's actual knowledge of the fraud, its substantial assistance to the fraud and that it acted with the requisite scienter. *Lawrence v. Bank of America, N.A.*, 455 Fed.Appx. 904 (11th Cir. 2012). In *Tippens v. Round Island Plantation L.L.C.*, No. 09-CV-14036, 2009 U.S. Dist. LEXIS 66224, at *20 (S.D. Fla. July 31, 2009) (stating the elements of a claim for aiding and abetting fraud) where the court found that knowledge and substantial assistance had not been adequately pled with respect to certain defendants, in this case, Plaintiff has clearly pled that OLD REPUBLIC had knowledge of the scheme, provided substantial assistance to McCabe in facilitating his continued operation by enabling City Title to operate as an agent of OLD REPUBLIC as detailed in the Complaint. Whether OLD REPUBLIC had actual knowledge of the fraud, which given Plaintiffs allegations of its participation in the RICO Enterprise suggest that it did, and whether it provided substantial assistance are issues for the jury. *See Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1569 (S.D. Fla. 1990).

### VII.   Punitive Damage Claims

OLD REPUBLIC demands that "All of the Plaintiffs' Counts containing a prayer for punitive damages should not be permitted. Old Republic asserts in its Motion that "Under Counts

21

CASE NO. 9:13-CV-80860-KLR

I and II, a claim for punitive damages under RICO should be not be permitted. The prevailing view is that punitive damages are not available because treble damages provisions of RICO statute are punitive in nature. *Toucheque v. Price Bros. Co.*, 5 F. Supp.2d 341, 350 (D. Mary. 1998); *Bingham v. Zolt*, 823 F. Supp. 1126, 1135 (S.D. N.Y. 1993), *aff'd*, 66 F. 3d 553 (2nd Cir. 1995); *Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 252-53; *Genty v. RTC,* 937 F.2d 899, 914 (3rd Cir.1991)." Certainly, the language of the RICO statute says nothing about punitive damages and there does not appear to be cases in this jurisdiction that have adopted the "prevailing view." Therefore, it is submitted that the claim for punitive damage should not be stricken.

**VIII.    The Prayer For Attorneys' Fees and Treble Damages Should be Dismissed or Stricken from Counts III-VI**

Defendant requests and Plaintiff does not object to the request that the prayers for treble damages and attorneys' fees *pursuant to 18 U.S.C. 1964* for their Aiding and Abetting claims and Unjust Enrichment claim in Counts III-VI be stricken.

**IX.    Conclusion**

This case is about the collaboration of professionals to create a scheme utilizing funds from multiple and intertwined business enterprises utilizing the perceived credibility of lawyers and a Title Insurance Company. The benefits of OLD REPUBLIC'S participation were the fees earned from the high volume of real estate transactions. The scheme and the prestige of doing business in the lucrative real estate market by flipping homes and saving homes and owning a piece of a shoe company and a vacation business cannot be disregarded. It is believed that OLD REPUBLIC has documents and electronic mail that it will have to reveal in discovery in this case. It is clear that the fraud was carried out in great secrecy by Timothy McCabe and his associates behind the walls of his law office and his related businesses will see the light of day. As has been plainly alleged in the Complaint and will be shown in far greater detail at trial, Defendant OLD REPUBLIC through

CASE NO. 9:13-CV-80860-KLR

its employees has direct liability to Plaintiff for being much more than a vendor of title insurance. The Plaintiff's would not have continued to deposit funds with McCabe if Old Republic had revealed the reasons for its revocation of the agency agreement with McCabe & Samiljan, P.A., in October 2012. Old Republic enable McCabe to continue to operate his scheme by appointing City Tile, LLC a McCabe company to be its agent.

Plaintiff respectfully asks this Court to find, that at minimum, Defendant OLD REPUBLIC has been adequately informed of its participation in the RICO Enterprise, RICO conspiracy and other claims such that it can answer the Complaint. *See Bocciolone*, 2009 U.S. Dist. LEXIS 34296, at *27 (denying motion to dismiss where defendant "has been given a fair notice of the nature of the claim and the grounds upon which it is based").

Respectfully submitted,

_____
ROBERT A. SELIG
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served *via* CM/ECF on November 15, 2013 on all counsel or parties of record on the attached Service List.

By: _____
Robert A. Selig, Esq.
E-Mail: raselig@boonedavis.com
Boone & Davis
2311 N. Andrews Avenue
Ft. Lauderdale, FL 33311
Tel: (954) 566-9919
Fax: (954) 566-2680
Counsel for Plaintiffs

CASE NO. 9:13-CV-80860-KLR

**SERVICE LIST**
*Marie Pupke, et al. vs. Timothy McCabe, et al.*
Case No. 9:13-CV-80860-RYSKAMP/HOPKINS
United States District Court, Southern District of Florida

Marcos Daniel Jimenez, Esq.
E-Mail: mjimenez@mwe.com
Kevin E. Gaunt, Esq.
E-Mail: kgaunt@mwe.com
McDermott Will & Emery LLP
333 Avenue of the Americas
Suite 4500
Miami, Florida 33131
Tel: (305) 358-3500
Fax: (305) 347-6500
Counsel for Defendant TD Bank


Larry M. Mesches, Esq.
E-Mail: Lmesches@kmjlawgroup.com
Klett, Mesches & Johnson, P.L.
2855 PGA Blvd., Suite 100
Palm Beach Gardens, FL 33410
Tel: (561) 624-8202
Fax: (561) 624-8303


Mario M. Ruiz, Esq.
E-Mail: mmr@cohenruiz.com
COHEN RUIZ, PA
201 S. Biscayne Boulevard, Suite 850
Miami, Florida 33131-2310
Telephone: (305) 702-3000
Facsimile: (305) 702-3030
Cynthia Morales, Esq.
cm@cohenruiz.com
Attorneys for Defendant, Old Republic