IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED by ___ D.C.

DEC 09 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| | |
|---|---|
| MARIE PUPKE, MARK PUPKE and ) <br> EURO INTERNATIONAL MORTGAGE, INC. ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TIMOTHY P. MCCABE, et al., ) <br> ) <br>     Defendants. ) | CASE NO. 13-80860-CV <br> RYSKAMP/HOPKINS |

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT TIMOTHY P. MCCABE**

COMES NOW, Defendant Timothy P. McCabe (hereinafter "McCabe") and files the following Answer and Affirmative Defenses to the Complaint filed herein (hereinafter "Complaint").

**PRELIMINARY STATEMENT**

Defendant McCabe is currently incarcerated, does not have access to the relevant files in this matter, does not have access to witnesses and parties for purposes of interview or

evidence gathering, and lacks the resources normally at the disposal of a defendant whether operating through counselor or pro se. Accordingly, McCabe reserves his right to supplement this Answer and Affirmative Defenses as information becomes available to him and in accordance with law. Notwithstanding, the foregoing, McCabe represents that he has satisfied all requirements under FRCP Rule 11, and reserves all rights in law and in equity appertaining to the preparation and maintenance of this Answer and Affirmative Defenses.

**ANSWER**

For his Answer to the Complaint, McCabe states as follows:

1. The allegations of paragraphs 6, 7, 8, 9, 10, 11, 14, 47-50, 64, 66, 79 and 80 are admitted.

2. The allegations of paragraphs 1, 17-43, 59, 71-75, 84-101, 104-113, 115-118, 120-123, 125-127, 129 and 130 are denied.

3. McCabe does not have sufficient knowledge or information to permit him to admit or deny such allegations of paragraphs 3,

4, 5, 17, 44, 45, 46, 51-58, 60-63, 65, 67-70, 77, 78, 81, 82 and 103, and therefore denies those allegations and demands strict proof of them.

4. In answering paragraph 2 of the Complaint, McCabe denies that "at all times material hereto" that he was an attorney licensed in the State of Florida, but admits the remaining allegations.

5. In answering paragraph 12, and 13, McCabe admits all of such allegations, except those about the website which are expressly denied.

6. In answering paragraph 15, McCabe admits that hits on the referenced website address may have, in the past, directed individuals to the referenced law firm; however, McCabe further alleges that the reference to the law firm and the linkage was not constant; that the businesses were constantly in a state of flux; and that there was no custom or practice that predicted with certainty when and where persons would be directed to the Law Firm of McCabe & Samiljan, LLC. McCabe further alleges that the primary communication tool for plaintiffs vis-a-vis McCabe

was a website and email address other than "thepropertydefender.com."

7. In answering paragraph 16, McCabe denies each and every allegation contained therein. Moreover, McCabe refers to his Affirmative Defenses filed herewith, with regard to the allegation and claim of McCabe that there were, in reality, never real property transactions; that the Plaintiffs were in fact were using McCabe to launder money under the guise that they were engaged in real estate transactions when in fact they were not; that Plaintiffs intended with their money laundering transactions to utilize McCabe's attorney trust account to collect usurious rates of interest from McCabe and his unsuspecting clients in violation of the civil and criminal laws; and that Plaintiffs threatened McCabe on numerous occasions that if McCabe ever revealed the aforesaid scheme, that Plaintiffs would "crush him." McCabe is currently incarcerated as a result of the aforesaid scheme, which he has admitted to, and Plaintiffs, despite receiving all of their principal back as well as usurious rates of interest, have filed this Complaint because Plaintiffs know they are under federal

investigation regarding their money laundering and extortion schemes. All paragraphs of this Answer, all Affirmative Defenses appended hereto are incorporated herein by reference as though fully set forth herein.

8. In responding to paragraph 76, McCabe admits that he participated in a conspiracy the Plaintiffs as co-conspirators to defraud others. There were no other co-conspirators except the Plaintiffs in this action. Other than as expressly set forth above, McCabe denies each and every allegation in paragraph 76.

9. McCabe repeats his respective responses to the restated allegations contained in paragraphs 83, 102, 114, 119, 124, 128 and 131.

10. McCabe denies any allegation not specifically admitted or denied above.

**AFFIRMATIVE DEFENSES**

As Affirmative Defenses to the Complaint, McCabe would show:

1. First Affirmative Defense - The Plaintiffs are barred from recovery under the doctrine of unclean hands.

2. Second Affirmative Defense - The Plaintiffs are barred from recovery by the doctrine of in pari delicto.

3. Third Affirmative Defense - The Plaintiffs are barred from recovery under the doctrine of assumption of risk.

4. Fourth Affirmative Defense - The Plaintiffs are barred from recovery under the doctrine of contributory negligence.

5. Fifth Affirmative Defense - The Plaintiffs are barred from recovery under the doctrine of equitable estoppel.

6. Sixth Affirmative Defense - The Plaintiffs are barred from recovery under the doctrine of waiver.

7. Seventh Affirmative Defense - The Plaintiffs defrauded McCabe as set forth above and as follows: McCabe has pled guilty to his crimes. He had formed a criminal intent in or about the January of 2009. At that time, McCabe believed that the relationship with the Plaintiffs could assist in extricating him from the crimes he was in the process of committing. Specifically, McCabe was a lawyer in good standing, was well trained, was sophisticated and had a fantastic client base. The Plaintiffs knew this and represented to him that they would do business ethically and competently. McCabe did not disclose his criminal intention to the Plaintiffs at the beginning. However, the Plaintiffs discovered McCabe's problems and his concomitant desperation sometime in 2010 and began demanding more and more money from McCabe's client trust account. These were usurious interest payments to the Plaintiffs and McCabe made this known to Plaintiffs. In response, Plaintiffs simply laughed it off and demanded interest of upwards of 10% per month. No other client of McCabe ever wanted to gauge the other clients and be involved in the criminal activities of McCabe. This is when McCabe was desperate because of the financial crisis and how it was impacting him and his family, and with no choice in the matter,

7

McCabe reluctantly went along with the Plaintiffs plan. He paid the exorbitant interest rates to the Defendants although he knew they were in fact doing no business real estate transactions and were merely operating a Ponzi scheme. Plaintiffs held themselves out as a mortgage company, but Plaintiffs were doing no real estate deals whatsoever using McCabe. But for the Plaintiffs' fraud, deceit and enabling of McCabe through the money Plaintiffs transferred to him, McCabe would never have been able to expand his fraud and conspiracy. Had McCabe known that the Plaintiffs were "enablers" wishing to leverage off of his ongoing conspiracy, a fact that they never once told him; McCabe would never have done business with them. Indeed, at the very end, the Plaintiffs had spoken to McCabe about a $10 million potential "take out" loan, which would have brought the Ponzi scheme to new levels, i.e., allowing discovery of it by authorities to be delayed and allowing its scope to increase dramatically. Following this proposal by the Plaintiffs, McCabe then had a change of heart, and after careful thinking and soul searching, decided to turn himself in, As a proximate result of the fraud and deceit of the Plaintiffs as set forth above, McCabe has been injured in a sum in excess of $15 million. To the extent positive recovery is not allowed, all legal fees and costs shall be recoverable on this sum.

8. Eighth Affirmative Defense - McCabe repeats and incorporates by reference all allegations set forth above with the exclusion of the Seventh Affirmative Defense. McCabe alleges that he is entitled to a set-off for amounts due to McCabe or his clients from the Plaintiffs, based on the fact that the Plaintiffs defrauded McCabe as follows: The Plaintiffs promised McCabe that they were performing real estate transactions in the residential real estate business. McCabe spent some 500 hours working on transactions outlined to him by Plaintiffs, at a time when McCabe desperately needed to devote his time and attention to other matters. Additionally, the initial monies advanced to McCabe by Plaintiffs were advanced by Plaintiffs with fraudulent intentions. Upon information and belief, McCabe alleges that the Plaintiffs had evaluated McCabe's financial condition in a predatory fashion prior to contacting him in 2010. Their purpose in doing so was to determine whether they could ensnare him with their money such that they could extort him and otherwise force him to pay exorbitant interest to them. The Plaintiff's purpose from the start was to make usurious loans to McCabe and by definition, and as intended by Plaintiffs, to McCabe and his clients. Had McCabe known of the fraud and deceit of the Plaintiffs as expressly alleged herein, McCabe never would have done business with the Plaintiffs. As a proximate and

foreseeable result of the fraud of the Plaintiffs, McCabe has been injured in the sum of more than $1,000,00. In addition, under law and fact, McCabe must operate under the law as a constructive trustee for his clients. It was the clients' money that was taken in exorbitant interests rates. On behalf of his clients, McCabe requests that the Court appoint a trustee to receive all monies repaid by Plaintiffs because of their fraud and usurious scheme alleged herein. McCabe requests that trustee shall segregate all such monies and provide an accounting to this Court of (a) all monies owed to the clients of McCabe, directly and indirectly, (b) all payments received from Plaintiffs herein, and (c) all interest thereon and payments thereon. Given there were no other co-conspirators besides Plaintiffs and no other victims other than McCabe's clients, the appointment of a trustee over any monies found to be due from McCabe to the Plaintiffs. In the event the Plaintiffs recover against McCabe, all such monies should be used to satisfy said judgment.

Ninth Affirmative Defense

For his ninth affirmative defnese, Mr. McCabe repeats and incorporates byreference allallegations set forth above with the exclu sion of the seventh and eight affirmative defense. Mr. McCabe alleges on information and belief that Plaintiffs always intended to use the exorbitant and usurious payments to them as kickbacks to unlicensed persons in order to avoid the real estate mortgage payment laws. Indeed, Mr. McCabe made direct payments to Plai ntiffs' agents -- illegally -- without knowledge of the exact plans and intentions of Plai ntiffs. Had Mr. McCabe known of the fraud of Plaintiffs, he wuldhave never gotten involved with them. As a proximate and foreseeable result of Plaintiff's fraud, Defendant Mr. McCabe has been damaged in a sum according to proof in excess of $1,000,000.

Tenth Affirmative Defense

For his tenth affirmative defense, Mr. MCCabe repeats and incorporates byreference all allegations set forth above. Mr. McCabe that Plaintiffs have violated the Florida Deceptive Practices Act and are responsible for payment to Mr. McCabe in a sum accoring to proof.

WHEREFORE, on all causes of action and all answers and all affirmative defenses, Mr. McCabe prays as follows:

1. For judgment for Mr. McCabe;

2. For the appointment of a constructive trustee under the judicial parameters set forth above;

3. For interest;

4. For reasonable attorneys' fees;

5. For costs; and

6. For  For such other and further relief as this Court shall deem just and proper.

Dated:

_____
TIM MCCABE, Pro Se